UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Tracy A. L. N.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-077 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Tracy N., on February 24, 2020. For the following reasons, the Court recommends that the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Tracy N., filed an application for Supplemental Security Income on May 30, 2017, alleging a disability onset date of April 18, 2017. (Tr. 21). The Disability Determination Bureau denied Tracy N.'s applications initially on August 23, 2017, and again upon reconsideration on October 31, 2017. (Tr. 21). Tracy N. subsequently filed a timely request for a hearing on December 7, 2017. (Tr. 21). A hearing was held on December 11, 2018, before Administrative Law Judge (ALJ) Jeanette Schrand, and the ALJ issued an unfavorable decision on May 1, 2019. (Tr. 18-38). Vocational Expert (VE) Kathleen L. Reis appeared at the hearing. (Tr. 21). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

At step one of the five-step sequential analysis for determining whether an individual is

---
[1] To protect privacy, the plaintiff's full name will not be used in this Order.

disabled, the ALJ found that Tracy N. had not engaged in substantial gainful activity since May 30, 2017, her application date. (Tr. 23).

At step two, the ALJ determined that Tracy L. had the following severe impairments: degenerative disc disease, insomnia, migraines, bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (Tr. 23). The ALJ found that the above medically determinable impairments significantly limited Tracy N.'s ability to perform basic work activities. (Tr. 35). Tracy N. also alleged disability due to degenerative joint disease of the right hand, high blood pressure, urinary tract infection, hernia, fatty liver, dyspnea, sleep apnea, pelvic pain, abdominal pain, hearing loss, heart disease, and lupus. (Tr. 24). However, the ALJ indicated that her degenerative joint disease of the right hand, high blood pressure, urinary tract infection, hernia, and fatty liver caused no more than a minimal limitation on her ability to engage in basic work activities, and therefore they were considered non-severe impairments. (Tr. 24). The ALJ also found that her dyspnea, sleep apnea, pelvic pain, abdominal pain, hearing loss, heart disease, and lupus were nonmedically determinable impairments, as the record did not contain any medically acceptable clinical and laboratory diagnostic techniques that supported an actual diagnosis. (Tr. 24).

At step three, the ALJ concluded that Tracy N. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 24).

After consideration of the entire record, the ALJ then assessed Tracy N.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) as the claimant is able to lift

2

> and/or carry 20 pounds occasionally and 10 pounds frequently and sit for six hours in an eight hour workday, except: the claimant is able to stand and/or walk for four hours in an eight hour workday, is unable to climb ladders, ropes or scaffolds, crouch, kneel or crawl, may occasionally climb ramps or stairs, balance or stoop and is limited to occasional exposure to hazards such as unprotected heights. The claimant is also limited to occasional exposure to wet, slippery, or uneven walking surfaces, and occasional exposure to bright sunshine or flashing lights. The claimant is also limited to a work environment with no more than moderate noise intensity as defined by the SCO. In addition, the claimant is able to understand, remember and carry out work that consists of no more than simple routine tasks; no more than frequent simple judgment defined as being able to make simple work-related decisions; and is limited to no more than simple workplace changes.

(Tr. 27). The ALJ explained that in considering Tracy N.'s symptoms she followed a two-step process. (Tr. 27). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Tracy N.'s pain or other symptoms. (Tr. 27-28). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Tracy N.'s functioning. (Tr. 28).

After considering the evidence, the ALJ found that Tracy N.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 28). However, she found that Tracy N.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 28). The ALJ found the state agency psychological consultants' opinions to be the only persuasive opinions in the record. (TR 33-34).

At step four, the ALJ found that Tracy N. was unable to perform any of her past relevant work. (Tr. 36). However, the ALJ found jobs that exist in significant numbers in the national economy that Tracy N. could perform. (Tr. 36). Therefore, the ALJ found that Tracy N. had not

been under a disability, as defined in the Social Security Act, since May 30, 2017, the date the application was filed. (Tr. 37).

## *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion." ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019); ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to

be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

   Tracy N. has requested that the court remand this matter for additional proceedings. In

5

her appeal, Tracy N. broadly argues that the ALJ's RFC was not based upon substantial evidence.

In support of her argument, Tracy N. contends that the ALJ improperly considered her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support her evaluation with specific reasons that are supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *1 (Mar. 16, 2016).

First, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i)      The individual's daily activities;

    (ii)     Location, duration, frequency, and intensity of pain or other symptoms;

      (iii)    Precipitating and aggravating factors;

      (iv)    Type, dosage, effectiveness, and side effects of any medication;

      (v)    Treatment, other than medication, for relief of pain or other symptoms;

      (vi)    Other measures taken to relieve pain or other symptoms;

      (vii)    Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3)**.

      The ALJ found that Tracy N.'s impairments reasonably could be expected to cause her alleged symptoms but that her statements concerning her symptoms were not entirely consistent with the evidence in the record. (Tr. 28). Tracy N. asserts that "not entirely consistent" is not the legal standard; rather, the ALJ must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. (citing **20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a)**). However, under SSR 16-3p, 2016 SSR LEXIS 4, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and other evidence." SSR 16-3p, 2016 SSR LEXSI 4, at *15, 2016 WL 1119029, at *8, *see also* **20 C.V.R. §§ 416.929(a)**. Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See* **Robert v. Berryhill**, 2018 U.S. Dist. LEXIS 162365, 2018 WL 4565385, at *7-8 (C.D. Ill. Sept. 24, 2018); *see also* **Parker v. Astrue**, 597 F.3d 920 (7th Cir. 2010).

      The ALJ spent the better portion of a page detailing Tracy N.'s allegations and the medical evidence that contradicted those allegations. (Tr. 33). First, Tracy N. contends that the ALJ erred by failing to acknowledge that her primary care physician, therapist, and consultative examiner included limitations not included in the RFC. However, Tracy N. does not assert that the ALJ erred in weighing those medical opinions, which the ALJ found not to be persuasive. (Tr. 33, 35). Since Tracy N. does not assert that the ALJ erred in finding those opinions not

persuasive, she is asking the court to reweigh evidence in support of her subjective symptoms. The court cannot reweigh evidence or substitute its own judgment for that of the ALJ. ***Brewer v. Chater***, 103 F.3d 1384, 1390 (7th Cir. 1997).

Tracy N. also asserts that the ALJ summarized the majority of the evidence without any analysis. However, the ALJ provided nearly a full page of analysis following her summary of the evidence. (Tr. 33). Tracy N. does not point to any portion of the ALJ's analysis that she disagrees with or asserts the ALJ improperly analyzed. Additionally, Tracy N. claims that the ALJ did not explain why she disregarded portions of the medical record. She argues that "the summary dismissal of selected symptoms and limitations [wa]s not sufficient to meet the legal requirements for deciding whether an individual is disabled under the Social Security Act." [DE 18 at 12]. Once again, Tracy N. fails to point to any contrary evidence that the ALJ failed to analyze. She states that the ALJ dismissed selected symptoms and limitations, but she does not point to any symptoms or limitations not discussed by the ALJ. It is the claimant's burden to prove disability. ***Smith v. Apfel***, 231 F.3d 433, 437 (7th Cir. 2000).

Tracy N.'s final argument regarding her subjective symptoms contends that the ALJ failed to consider her daily activities and how she completed them. The ALJ provided a list of Tracy N.'s daily activities when discussing her mental impairments at step two. (Tr. 25-26). However, the ALJ provided no analysis of her daily activities in regard to her physical impairments or how they supported or contradicted Tracy N.'s subjective symptom allegations. Tracy N. testified that she laid in bed or in her recliner for most of the day and that she only got up to prepare food for herself and her son. (Tr. 82). In her function report, Tracy N. noted that she could make sandwiches and "some meals" but that her son helps her. (Tr. 256). She testified that her husband and son helped with dishes and laundry but that she could fold laundry if she

8

stayed seated. (Tr. 82). She testified that although she made food, she had to take breaks and rest periods during the day. (Tr. 82-83). This was corroborated by her function report, wherein she stated that she could do some cleaning, but "it takes [her] a long time [with] a lot of breaks in between." (Tr. 256). She testified that she could walk only two to three blocks at a time and that she could stand in a stationary position for only two to three minutes at a time. (Tr. 83-84). She testified that she could occasionally lifted a gallon of milk and that she could not always pick up her granddaughter. (Tr. 85-86). Tracy N. also reported that there were days that she could not get out bed due to her migraines. (Tr. 261).

The ALJ did not discuss Tracy N.'s daily activities nor her difficulties in completing them. The ALJ has failed to build a logical bridge between the evidence of Tracy N.'s daily activities and the conclusion that her testimony was not credible. The ALJ must do more than just detail a claimant's testimony about daily activities; she must explain how those daily activities were consistent or inconsistent with the pain the claimant claims. **Villano v. Astrue**, 556 F.3d 558, 562 (7th Cir. 2009). The ALJ failed to do so here.

Tracy N. also asserts that the ALJ erred in her RFC discussion by finding she had no manipulative limitations despite showing reduced grip strength. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." **Young v. Barnhart**, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including

statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but [she] must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support h[er] conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v.*

*Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ did not provide any manipulative limitations in the RFC. (Tr. 27). At the consultative examination, the examiner found that Tracy L. had decreased grip strength bilaterally, and that her dynamometer testing showed that she could generate only 9.3 kilograms of force with her right hand and only 8.2 kilograms of force with her left hand. (Tr. 553). The ALJ found that opinion to be not persuasive because "it [wa]s vague and d[id] not contain any limitations that [we]re meaningful to disability analysis." (Tr. 33). However, the testing regarding her grip strength was objective medical evidence and not the examiner's opinion. The ALJ also acknowledged that the consultative examination "was noted to be within normal limits except for tenderness and limited range of motion of her cervical and lumbar spine, an unsteady gait and some diminished grip strength." (Tr. 33). The ALJ acknowledged Tracy N.'s diminished grip strength and appeared to have accepted it as objective medical evidence, yet she failed to fully analyze, discuss, or include manipulative limitations regarding it.

Tracy N. was 43 years old on the date of the ALJ's decision. (Tr. 36). The average performance for grip strength of women in their forties, according to one study from 2014, is 29.9-30.7 kilograms of force. Dodds, R., et al, *Grip Strength Across the Life Course: Normative Data from Twelve British Studies*, PLOS ONE, December 4, 2014, at S77-S78. A second study found that women in their forties had an average grip strength of 29 kilograms in their right hand, and 28 kilograms in their left hand. Massy-Westropp, et al, *Hand Grip Strength: Age and Gender Stratified Normative Data in a Population-based Study*, BMC RESEARCH NOTES, https://www.bmcresnotes.biomedcentral.com (last visited March 12, 2021). Regardless of the study, Tracy N.'s grip strength tested significantly below the mean grip strength for her age

group. Her grip strength was less than half that of an average woman in her age group. The ALJ acknowledged that the consultative examiner found reduced grip strength but failed to consider it in the RFC analysis. The Commissioner's brief does not address this argument.

While the ALJ found that the majority of the medical opinions in the record were not persuasive, many were consistent with the objective testing done by the consultative examiner regarding Tracy N.'s grip strength. For instance, her treating doctor noted numbness in both her hands, manipulative limitations (occasional handling), and pain in her fingers. (Tr. 939-41). The ALJ's failure to consider Tracy N.'s decreased grip strength was exacerbated by the ALJ relying on "full strength … of her extremities" in finding her treating doctor's opinion to be not persuasive. (Tr. 35). The ALJ failed to acknowledge or analyze Tracy N.'s greatly reduced grip strength, which requires remand, as any changes to limitations in handling "would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations." SSR 18-15, 1985 SSR LEXIS 20 at *19.

Tracy N. makes several other arguments regarding her subjective symptoms and the RFC. However, because the ALJ erred in considering her daily activities and her reduced grip strength, the Court need not address the other arguments at this time. A full and proper analysis of these issues may alter the RFC and the ALJ's treatment of Tracy N.'s subjective symptoms. The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the court recommends that the decision of the Commissioner be **REMANDED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this

Recommendation before either the District Court or the Court of Appeals.  ***Willis v. Caterpillar, Incorporated***, 199 F.3d 902, 904 (7th Cir. 1999); ***Johnson v. Zema Systems Corporation***, 170 F.3d 734, 739 (7th Cir. 1999); ***Hunger v. Leininger***, 15 F.3d 664, 668 (7th Cir. 1994); ***The Provident Bank v. Manor Steel Corporation***, 882 F.2d 258, 260-61 (7th Cir. 1989); ***United States v. Johnson***, 859 F.2d 1289, 1294 (7th Cir. 1988); ***Lebovitz v. Miller***, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 22nd day of March, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge